```
BETTY H. RICHARDSON
UNITED STATES ATTORNEY
WARREN S. DERBIDGE
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WELLS FARGO CENTER
877 WEST MAIN STREET, SUITE 201
BOISE, IDAHO  83702
TELEPHONE:  (208) 334-1211
MAILING ADDRESS:
  P.O. BOX 32
  BOISE, IDAHO  83707
```

U.S. COURTS

00 NOV 13 PM 4: 08

REC'D_____FILED_____
       CAMERON S. BURKE
.CLERK           IDAHO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED MINING CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>BRUCE M. BABBIT, JR., Secretary of the Interior of the United States, UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT<br><br>    Defendants. | Case No. CV 99-594S-MHW<br><br>**ANSWER OF UNITED STATES TO FIRST AMENDED COMPLAINT** |

**COMES NOW** the United States Attorney, for and on behalf of Defendants United States of America, and answers Plaintiff's First Amended Complaint as follows:

I.

The United States admits that this Court has jurisdiction because the United States is a Defendant, and denies that this Court has jurisdiction under the Administrative Procedures Act because Plaintiff has failed to exhaust administrative remedies.

**ANSWER OF UNITED STATES TO FIRST AMENDED COMPLAINT  - 1**

**II.**

Defendant United States denies each and every allegation not expressly admitted.

**III.**

Defendant United States admits the allegations contained in paragraphs 2, 3, 7, 9, 12, 13, and 14 of the First Amended Complaint.

**IV.**

Defendant United States denies the allegations contained in paragraphs 4, 5, 6, 8, 10, 11, 16, 17, 19, 20, 22, 23, 24, 24[sic], and 24[sic] of the First Amended Complaint.

**V.**

Answering paragraphs 15 and 21, the United States incorporates its responses to the earlier referred to paragraphs of the Complaint as if set out in full therein.

**VI.**

Answering paragraph 18, the United States admits Plaintiff filed its location notices for the unpatented KB claims on April 23, 1992, and that the decision in United States v. United Mining Corporation, 142 IBLA 339 (1998) was entered on February 10, 1998, and denies the balance of the allegations therein contained.

**AFFIRMATIVE DEFENSES**

**VII.**

Plaintiff's First Amended Complaint fails to state a claim against the United States upon which relief may be granted.

**VIII.**

Plaintiff has failed to exhaust available administrative remedies, and this action for judicial review is premature. The

**ANSWER OF UNITED STATES TO FIRST AMENDED COMPLAINT  - 2**

decision of the Secretary (appended hereto as Exhibit A) expressly remanded the case to the Interior Board of Land Appeals to consider further evidence, which further hearing has not yet taken place.

WHEREFORE, Defendant United States prays that judgment be entered in its favor dismissing the case, that Plaintiff take nothing thereby, and that Defendant be awarded its costs and for other and further relief which the Court deems just.

DATED this 13th day of November, 2000.

BETTY H. RICHARDSON
United States Attorney
By

WARREN S. DERBIDGE
Assistant United States Attorney

**ANSWER OF UNITED STATES TO FIRST AMENDED COMPLAINT   - 3**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office for the District of Idaho, and that a copy of the foregoing ANSWER OF UNITED STATES was mailed, postage prepaid, to all parties named below, this 13th day of November, 2000.

    Kenneth D. Nyman
    ANDERSON, JULIAN & HULL, LLP
    C. W. Moore Plaza
    250 S. 5th St., Ste. 700
    Boise, ID    83707-7426

    Christ T. Troupis
    TROUPIS & SUMMER
    1406 E. 1st St., Ste. 101
    P. O. Box 1367
    Meridian, ID    83680

                                        /s/ Janis Malm
                                        _____

**ANSWER OF UNITED STATES TO FIRST AMENDED COMPLAINT  - 4**

Decision Upon Review of
*United States v. United Mining Corporation*, 142 IBLA 339

*In United States v. United Mining Corporation*, 142 IBLA 339 (1998), the Interior Board of Land Appeals (IBLA) held that placer claims located by the United Mining Corporation (United Mining) under the Building Stone Act[1] were valid. The IBLA found that "building stone" includes stone used for ornamental purposes and the use of the stone, rather than its value, is determinative of whether the stone may be classified as building stone. The IBLA also found that the Building Stone Act's requirement that land be "chiefly valuable" for building stone is met when a mineral is found on the lands in a quantity and of a quality sufficient to render the land more valuable on account thereof than for agricultural purposes. Finally, the IBLA determined that the term "chiefly valuable" contemplates that the measurement of values must be quantifiable using units of measure applicable to both sides of the equation, thereby precluding the aesthetic and geological values of the land on which the claims are located.

The issues before me in this review are: (1) whether the term "chiefly valuable" as used in the Building Stone Act (BSA) requires an assessment of comparative values and whether those values could include values other than agricultural, e.g., scenic, historic, recreational and scientific; and (2) whether the Mining Law (General Mining Law of 1872 or General Mining Law) itself incorporates a requirement that there be an assessment of comparative values. These questions were addressed by several interested parties.

My authority to determine these issues is found at 43 C.F.R. § 4.5. The Deputy Solicitor, with the assistance of the Division of General Law in the Solicitor's Office, has provided legal advice and analysis on the issues before me and I am relying on that advice in reaching my conclusions.

*Background*

This matter began in 1991, when United Mining submitted a Mineral Material Sales Application (Application) with the Bureau of Land Management (BLM) to purchase 180 tons of water-sculpted basalt boulders (Holystone boulders) from the Big Wood River channel managed by BLM in the state of Idaho. BLM established a community pit along the Big Wood River Channel and began an Environmental Assessment (EA) of the proposed sale described in the Application. United Mining located 14 placer claims in February 1992 and filed location notices with the BLM. BLM issued its EA in April 1992. BLM proposed through a Federal Register Notice of July 8, 1992, that the land along the Big Wood River channel be withdrawn to protect "several unique geologic sites."[2] In December 1992, BLM acted upon the EA and issued a

1

---

[1] 30 U.S.C. § 161.

[2] See 57 Federal Register 30228-02.

EXHIBIT **A**

Finding of Significant Impact regarding United Mining's Application. In January 1993, BLM rejected United Mining's Application.

On March 8, 1993, United Mining submitted to BLM a Notice of Intent to engage in mining operations. BLM filed a contest complaint on March 11, 1993. A formal contest hearing was held on April 4 and 5, 1994, before Administrative Law Judge Ramon Child. Judge Child declared United Mining's claims null and void as the land on which the claim was located was more valuable for aesthetic or geological purposes than for building stone or any mining purpose.

That decision was appealed to the IBLA which affirmed, reversed and vacated portions of Judge Child's decision. *See* 142 IBLA 339 (1998).

*Analysis*

The BSA is applicable to United Mining's claims, notwithstanding its planned ornamental use. As noted by the IBLA, there is "clear precedent" for the finding that ornamental or decorative uses of stone fall within the BSA. Arguments that the stone's planned decorative use remove it from the application of the BSA and subject it to the General Mining Law cannot stand in the face of such precedent. Accordingly, the question herein, therefore, is whether the land along the Big Wood River channel is "chiefly valuable" for building stone?

The BSA, codified at 30 U.S.C. § 161, states in part:

Any person authorized to enter lands under the mining laws of the United States may enter lands that are chiefly valuable for building stone under the provisions of the law in relation to placer mineral claims.

The Department has recognized that making a comparison is inherent in the requirement that land be "chiefly valuable:"

The Act of 1892 [BSA], relating to building stone, however, requires as an additional prerequisite for a valid claim for building stone, that the lands embraced within such claims must be chiefly valuable for the located mineral. Therein, Congress has expressly mandated a comparison of values approach.

*U.S. v. Kosanke Sand Corp. (Kosanke),* 12 IBLA 282, 301 (1973) [bracketed material added]. Although there was agreement that a comparison is to be made, there was significant difference among the parties concerning what sort of comparison is required by the BSA. For example, while Petitioners favor a broad interpretation of diverse values under the BSA, the mining interests assert that the comparison is narrow and only encompasses mining and agricultural uses.

Congress itself remained silent on the meaning of the term "chiefly valuable." Legislative history accompanying the BSA is also silent as to the meaning of the term "chiefly valuable." In

2

explaining the purpose behind the Act, the House Committee on Public Lands noted that the BSA was a response to decisions of the Department which held that building stone was not a mineral locatable under the mining laws. Congress' objective was to "direct that building stone be included within the term mineral." *See* House Report No. 1204, April 26, 1892.

In discussing determinations regarding mineral lands, the Committee spoke to the comparisons made under the mining laws; "the test applied being uniform with regard to all mineral substances, viz, whether or not the land containing such substance is more valuable therefor than for agricultural purposes." *Id.* Although the Committee phrased the comparison as one between mining and agriculture, there is no indication that this was intended as a term of limitation of the BSA.

A review of various decisions shows that comparative values under the BSA were commonly stated in terms of a comparison between mining and agriculture, as the latter appears to have been the common competing use at the time the BSA was enacted. *See Clark v. Ervin,* 16 Pub. Lands Dec. 122 (1893); *Florence D. Delaney,* 17 Pub. Lands Dec. 120 (1893); *Hayden v. Jamison (on review),* 26 Pub. Lands Dec. 373 (1898); and *Mary D. Platt,* 33 Pub. Lands Dec. 270 (1904) (all involving mineral versus homestead entries). These decisions came about as the courts and the Department determined whether lands were mineral in character and thus fit for disposition pursuant to either the General Mining Law or the BSA. However, under both statutes, decisions determining whether land was mineral in character included values beyond agriculture and mining. *See Forsythe et. al. v. Weingart,* 27 Pub. Lands Dec. 680 (1898) (building stone versus timber); *Thomas H.B. Glaspie,* 53 Int. Dec. 577 (1932) (land's use as a watering hole for stock-raising valid over mineral entry); and *Stanislaus Electric Power Company,* 41 Pub. Lands Dec. 655 (1912) (land's use for hydroelectric power greater than its mineral value).

There is nothing to indicate that the courts or the Department intended to preclude other values from the comparisons made under the mining laws, and although mining versus agriculture was the common expression of the comparative values test, other values have been considered as well.

> If mineral patents will not be issued unless the mineral exist in sufficient quantity to render the land more valuable for mining than for other purposes... it should follow that the land may be patented for other purposes if that fact does not appear.

*Davis' Administrator v. Weibbold,* 139 U.S. 507, 523-24 (1891). In *Alldritt v. No. Pacific RR Co.,* 25 L.D. 349, 350 (1897), the Department phrased the determination for whether land was mineral as "whether the tract here involved is more valuable for mineral than for other purposes."

Contrary to IBLA's assertion, the BSA does not preclude comparison of values other than agriculture. If it did, Congress could have written the Act to provide that land must be more valuable for building stone than for agriculture. It did not do so, recognizing that other values

3

could be considered.

Likewise, there is no apparent limitation of the building stone comparison to quantifiable values. The BSA is silent regarding the specific nature of the comparison to be made in determining if land is "chiefly valuable." Although a comparison of values, which are identically quantifiable, might provide for ease in determining "chiefly valuable," this is not required by the statute.

As the Federal agency charged with stewardship over the nation's resources, the Department of the Interior is particularly suited to make fair and rational comparisons between natural resource values and the marketplace. Indeed, such determinations regarding the land are recognized as uniquely within our jurisdiction:

> The determination of the validity of claims against the public lands was entrusted to the General Land Office in 1812 . . . and transferred to the Department of the Interior on its creation in 1849 . . . since that time, the Department has been granted plenary authority over the administration of public lands, including mineral lands; and it has been given broad authority to issue regulations governing them.

*Best v. Humboldt Mining Co.*, 371 U.S. 334, 335 (1963). In the years that the Department has exercised this discretion over mining issues, the Department has not issued a rule limiting comparisons with regard to building stone. Where such a narrow construction has been intended by the Department, it has been clearly indicated. An example pertinent to this matter is in the Mineral Leasing Act[3] regulations which define "chiefly valuable" for purposes of mineral leasing:

> a valuable deposit where there is no significant conflict between the extraction of sodium, sulphur or potassium and any non-mineral disposition of lands. Where such extraction conflicts with other disposition, the lands shall be deemed chiefly valuable for sodium, sulphur or potassium extraction if the economic value of the lands for extraction of such minerals exceeds its economic value for any non-mineral disposition.

43 C.F.R. § 3500.0-5(.j). No such limitation has been stated for building stone, nor do the Mineral Leasing Act regulations indicate that they are intended as an interpretation or extension of the BSA.

Where quantifiable amounts may be presented for such things as the conservation, geologic or aesthetic values of land, such factors should be included in the "chiefly valuable" comparison. BLM indicated in its submissions that such valuations are now available and continue to be made with greater precision. However, the lack of such a quantifiable valuation would not preclude a valid comparison of values from being made under the BSA.                    4

---

[3] 30 U.S.C. § 181 et. seq.

The BSA does not limit the uses of land which may be considered under its comparative values test, but calls for a determination of the best or chief use of the land. The language of the statute permits determinations to be made in a manner that recognizes changing societal needs and values. At the time of enactment, Congress was concerned with the development of the nation and its resources.[4] Now the conservation and preservation of resources are also valued.[5] The requirement that land be "chiefly valuable," with nothing more in the way of explanation, indicates that Congress developed a flexible test that permits for a contemporaneous determination of what is the chief value.

Adjustments presented to the effect that a patent must issue upon the discovery of a paying mine ignore the fact that the BSA requires a comparison. If such were the case, there is no point in making the comparison so clearly intended by the BSA. Under the Act there are no such mandates; in fact they would fly in the face of the Act.

Because this matter is to be resolved under the BSA, I need not consider here whether the comparative value test also applies to the General Mining Law of 1872. While the term "chiefly valuable" does not appear in the latter statute, the term "valuable for minerals" may imply the need to consider the term "valuable" relative to other quantifiable and non-quantifiable values. While such an interpretation would be consistent with contemporary land use needs, that decision will be left to another day. *See e.&, Davis' Administrator v. Weibbold,* 139 U.S. 507, 523-24.

*Decision*

I am reversing the IBLA and am remanding this matter to the IBLA for action consistent with

---

[4] Congressional debate about the building stone act noted the purpose behind the mining law:

> we are reducing miners to purchase their claims, so that large amounts of money are thereby bought into the Treasury of the United States, causing the miners to settle themselves permanently, to improve and establish homes, to go down deeper in the earth, to dig further into the hills, and in every way to improve their own condition, and to build up the communities and States where they reside.

145 Congressional Globe 534, January 23, 1872.

[5] An example of this is found in the Federal Land Policy and Management Act of 1976, where Congress clearly articulated a new policy of conservation and protection of resources that provided, in part that:

> the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use

43 U.S.C. § 1701(a)(8).

this decision. Specifically, the IBLA should apply the comparative values test of the Building Stone Act in a manner that allows for a comparison of the value of all potential land uses, including those that are quantifiable and non-quantifiable. The IBLA should also permit the introduction of evidence of resource valuation, as appropriate and available, by the parties. The IBLA should then consider whether the portion of land along the Big Wood River channel subject to United Mining's claims is "chiefly valuable" for building stone as required by then Building Stone Act.

I have asked the Deputy Solicitor to transmit this decision to all parties.

(s) Bruce Babbitt<br>Secretary of the Interior

Date: May 15, 2000